# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. McCURDY,<br><br>        Plaintiff,<br><br>   v.<br><br>S. KERNAN, et al.,<br><br>        Defendants. | Case No. 1:17-cv-01356-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 16)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff James C. McCurdy is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's first amended complaint, filed on March 19, 2018.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is housed at California State Prison, Sacramento. The incidents alleged in the complaint occurred while Plaintiff was housed at California State Prison, Corcoran ("Corcoran"). Plaintiff brings this action against nineteen defendants alleging excessive force and deliberate indifference to his serious medical needs in violation of the Eighth Amendment; denial of due process in violation of the Fourteenth Amendment; and assault and battery under California law.

Plaintiff arrived at Corcoran on August 18, 2015, and was housed in MHCB due to his medical and mental health issues. (First Am. Compl. 8,[1] ECF No. 16.) Plaintiff had received a

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

rule violation report for attempted murder. (FAC at 8.) Plaintiff was told that he was in a manic state and was placed on forced medication. (FAC at 8.) Plaintiff suffers from Irritable Bowel Syndrome (IBS) and has chronic pain and other symptoms which affect his everyday functions. (FAC at 8.)

In August of 2015, Plaintiff had been told that he had a projected release date of May 2017, and that he would be housed in the security housing unit at Corcoran. (FAC at 8.) While Plaintiff was housed at Corcoran he was seen by medical and mental health and provided medications to treat his chronic pain and other symptoms. (FAC at 8-9.) Plaintiff also requested other accommodations such as medical transport and lower bunk chrono. (FAC at 9.)

On April 15, 2016, Plaintiff was told by custody officials to transpack because he and a neighboring inmate were being transferred to Pelican Bay State Prison ("PBSP") because certain supervisors had implemented a policy. (FAC at 9.) Corcoran was attempting to achieve a balance of segregated inmates before it became overcrowded and there was space at PBSP and changes had been made to the mental health system there. (FAC at 9.)

Plaintiff pleaded with officials telling them that both medical and custody were aware that he had a serious medical need. (FAC at 9.) Plaintiff requested a special transport especially if he was going to be belly chained for more than 10 hours without a chance to relieve himself. (FAC at 9.) Plaintiff complained that he had not attended an I.C.C. to be put up for transfer and he had no chance to appeal the action. (FAC at 10.) The custody officer left and came back, informing his neighbor that he would not be transferred, but stating that Plaintiff would be transferred to PBSP. (FAC at 10.) Plaintiff requested to speak to a superior officer. (FAC at 10.)

Captain Lesniak came to his cell and told Plaintiff that he did not know who had ordered the transfer but it came from higher ups" which Plaintiff alleges referred to the Secretary of the CDCR Kernan and the Warden of CSP, Dave Davey. (FAC at 10.) Captain Lesniak stated that they had implemented a policy where PBSP secured housing unit had been emptying out and to create a balance between the two secured housing units, Corcoran was sending inmates to PBSP to avoid overcrowding. (FAC at 10.) When Plaintiff asked who determined what inmates were

1  chosen to move, Captain Lesniak did not answer.  (FAC at 10.)  Plaintiff stated that he was going

2  to file an inmate appeal of the transfer and that he had serious medical issue and needed medical

3  attention to prevent his transfer without a special transport.  (FAC at 10.)

4      Plaintiff contends that normally inmates attend an I.C.C. hearing when they are

5  considered for transport to another institution.  (FAC at 10.)  At this hearing, any medical issues

6  are discussed.  (FAC at 10.)  The inmate would then have 30 days to appeal the transfer decision.

7  (FAC at 10.)  Plaintiff contends that he was denied a right to a hearing on the transfer and to see

8  medical to get a special transport because this happened on the weekend.  (FAC at 10.)  Plaintiff

9  alleges that on a regular transport bus he is not allowed to use the toilet on the bus and it is very

10  difficult to urinate because your hands are placed together in front.  (FAC at 11.)  Plaintiff has at

11  least 8 to 10 bowel movements a day and has humiliated himself on prior transports because he

12  could not properly relieve himself.  (FAC at 11.)  Plaintiff suffers from chronic pain, vomiting,

13  nausea, and diarrhea.  (FAC at 11.)  Plaintiff was told by medical that custody is responsible for

14  providing transport for inmates with special needs.  (FAC at 11.)  Custody told Plaintiff that he

15  needed to speak to transport and that if he did not cooperate he would be physically removed

16  from his cell on April 18, 2016, and his property would be destroyed.  (FAC at 11.)  Plaintiff

17  refused and requested several times for custody to alert medical and their superior officers to

18  discuss his transfer and his conditions, but no one responded.  (FAC at 11.)

19      On Monday, April 18, 2016, custody officers came to Plaintiff's cell and told him to get

20  on the bus.  (FAC at 11.)  Plaintiff again asked to speak to medical and commanding officials

21  about his serious medical needs but no one responded.  (FAC at 11.)  About 6:00 a.m., Sergeant

22  Hubbard came to the cell door and told Plaintiff to submit to cuffs and that he was holding

23  everyone up.  (FAC at 11.)  Plaintiff asked him to alert medical officers because of his needs but

24  the request was ignored.  (FAC at 11.)

25      About 7:00 a.m., Lieutenant Espinoza approached Plaintiff's cell and told him that if he

26  refused to cuff up they would use force to remove Plaintiff from his cell, put him on the bus, and

27  destroy his property.  (FAC at 11.)  Plaintiff told him to alert medical staff to his serious medical

28  need but no one responded.  (FAC at 11-12.)  Correctional Officer Alonso was at Plaintiff's door

4

1  and told Plaintiff that he needed to see him at all time and was concerned for his safety. (FAC at

2  12.) Plaintiff asked him why he had not been able to speak to medical staff or a commanding

3  officer about the possibility of getting a medical transport and to guarantee that his property

4  would be properly packed and sent to PBSP. (FAC at 12.) Correctional Officer Alonso stated

5  that he did not have anything to do with medical and he was there to keep an eye on Plaintiff

6  until he submitted to being cuffed or was forcibly removed from his cell. (FAC at 12.)

7       After Plaintiff refused to leave his cell, Registered Nurse N. Balaba gave officials

8  clearance to use O.C. spray. (FAC at 12.) Plaintiff did not get a chance to speak with medical

9  officials and was physically, mentally, and emotionally injured. (FAC at 12.)

10      At 8:00 a.m., Psychologist M. Itriago responded to Plaintiff's cell to address his issues.

11 (FAC at 12.) She told Plaintiff that everything would be resolved when he submitted to cuffs,

12 but Plaintiff still refused until he spoke with medical officials. (FAC at 12.) Captain Lesniak,

13 Lieutenant Espinoza, and Sergeant Hubbard evaluated the totality of the circumstances and

14 determined that the use of force was an appropriate option. (FAC at 12.) They would use O.C.

15 spray and assess his behavior to determine the effectiveness and if uneffective the extraction

16 team would enter the cell. (FAC at 12.)

17      At 10:00 a.m., Lieutenant Espinoza explained on video the force options that were to be

18 used and Captain Lesniak and Lieutenant Espinoza authorized an additional application of O.C.

19 spray. (FAC at 13.) They then determined that cell extraction was necessary. (FAC at 13.) An

20 extraction team was assembled. Sergeant Case was the camera man; Sergeant Hubbard was less

21 lethal force; Correctional Officer Ramirez was less lethal force/baton; Correctional Officers

22 Cortez and Mendoza were escort; Correctional Officer J. Ledesma was handcuffs; Correctional

23 Officer G. Viduya was leg irons; Correctional Officer J. Bautista was shield man; Correctional

24 Officer Alonso was scribe; Correctional Officer Pena was a bystander; J. Clingerman was

25 doorman; and Registered Nurse Balaba and Physical Therapist Torres were there for medical

26 support. (FAC at 13.)

27      At 10:00 a.m. the extraction team entered 41A-R with a battering ram and other

28 equipment. (FAC at 13.) The officers gather in front of Plaintiff's cell in gear and masks. (FAC

1    at 13.) An officer told Plaintiff to submit to cuffs and no force would be used. (FAC at 13.)

2    Plaintiff asked if they would put him on a special transport and guarantee that his property would

3    be properly packed. (FAC at 13.) There was no special transport there. (FAC at 14.) Plaintiff

4    was told that he was holding up the bus at R&R. (FAC at 14.) Plaintiff was under the

5    impression that he would be placed on the same bus and his property would be destroyed so he

6    refused. (FAC at 14.) An officer announced that force would be used to extract Plaintiff form

7    his cell. (FAC at 14.)

8        Two officers used the battering ram to clear the doorway of the cell. (FAC at 14.) As

9    Plaintiff stood on the bunk in his cell, Sergeant Hubbard sprayed O.C. into the cell and Plaintiff

10   was disoriented. (FAC at 14.) Plaintiff began coughing and gagging and the sergeant gave

11   orders for him to cuff up. (FAC at 14.) Plaintiff still refused. (FAC at 14.) The sergeant

12   administered three bursts of O.C. spray. (FAC at 14.) Before Correctional Officer Clingerman

13   manually opened the door, the officers charged into the cell. (FAC at 14.) Correctional Officer

14   Bautista came in with the shield and charged at Plaintiff who was on his bunk. (FAC at 14.)

15   Plaintiff put his hands forward and Correctional Officer Bautista crashed into Plaintiff at the

16   same time that Correctional Officer Ramirez began hitting Plaintiff with the baton on his head

17   and shoulders. (FAC at 14.) Plaintiff was forced to the back of the cell onto his back. (FAC at

18   14.) Correctional Officer Bautista fell on Plaintiff trapping him under the shield. (FAC at 14.)

19   The correctional officers began pulling Plaintiff out from under the shield. (FAC at 14.)

20        Correctional Officer Bautista handed the shield to another officer and one officer grabbed

21   Plaintiff's arm. (FAC at 14.) Bautista, Viduya, Ledesma, and Ramirez forced Plaintiff onto his

22   stomach as they placed leg irons around his ankles and his hands into cuffs. (FAC at 14.)

23   Plaintiff's right hand was trapped under one of the officer's boots and was mashed into the

24   concrete. (FAC at 14.) Plaintiff was placed into cuffs while the officers placed their weight on

25   him and mashed his head into the concrete. (FAC at 14.) Correctional Officer Bautista ran his

26   hand up into Plaintiff's shorts and grabbed Plaintiff's testicle and penis and began to squeeze

27   hard. (FAC at 14.) Correctional Officer Bautista began throwing punches into Plaintiff's

28   genitals until Plaintiff screamed and went completely limp. (FAC at 15.) Four officers carried

1 Plaintiff out of the cell and placed him face down on the concrete. (FAC at 15.)

2 Plaintiff was escorted to the rotunda by Cortez and Medina who asked him if he wanted

3 to decontaminate. (FAC at 15.) The shower was running and they were about to place Plaintiff

4 under the running water, but he refused because he did not want to be wet during the transport.

5 (FAC at 15.) Plaintiff was not checked for injuries. (FAC at 15.) Cortez and Medina placed

6 Plaintiff into a car and Plaintiff asked for his glasses and his legal paperwork. (FAC at 15.)

7 Plaintiff was given his broken glasses and a pillowcase which was placed in a box. (FAC at 15.)

8 The rest of Plaintiff's property was destroyed. (FAC at 15.)

9 Plaintiff states that he still has difficulty holding things in his hand and his jaw was

10 injured and comes unhinged and randomly pops when he is eating. (FAC at 16.) Plaintiff is

11 seeking monetary damages and declaratory relief. (FAC at 20, 22.)

**III.**

**DISCUSSION**

**A.    Linkage Under Section 1983**

15 Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

16 other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d

17 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

18 Jones, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely

19 provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex

20 rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490

21 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must

22 allege facts demonstrating the existence of a link, or causal connection, between each

23 defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't

24 of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202,

25 1205-08 (9th Cir. 2011).

26 In this instance, Plaintiff names nineteen individuals as defendants and sues them all in

27 their individual capacities. However, Plaintiff fails to link each of the individual defendants to

28 affirmative actions or omissions which give rise to his alleged constitutional violations. The first

1  amended complaint does not contain any allegations regarding Michael Penn or D. Grimsley.

2  Accordingly, Plaintiff has failed to state a cognizable claim against Michael Penn or D. Grimsley

3  and the Court recommends that they be dismissed from this action.

4       **B.      Eighth Amendment**

5       The Eighth Amendment's prohibition against cruel and unusual punishment protects

6  convicted prisoners. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Graham</u>, 490 U.S. at 395 n.10.

7  Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure

8  that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

9  personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and

10 citations omitted), but not every injury that a prisoner sustains while in prison represents a

11 constitutional violation, <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation

12 marks omitted).

13      1.      <u>Excessive Force</u>

14      Plaintiff alleges the use of excessive force based on his cell extraction on April 18, 2016.

15 The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments

16 Clause of the Eighth Amendment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (citations

17 omitted). For claims arising out of the use of excessive physical force, the issue is "whether

18 force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

19 sadistically to cause harm." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (citing

20 <u>Hudson</u>, 503 U.S. at 7) (internal quotation marks omitted); <u>Furnace v. Sullivan</u>, 705 F.3d 1021,

21 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual

22 and responsive to contemporary standards of decency, <u>Hudson</u>, 503 U.S. at 8 (quotation marks

23 and citation omitted), and although de minimis uses of force do not violate the Constitution, the

24 malicious and sadistic use of force to cause harm always violates contemporary standards of

25 decency, regardless of whether or not significant injury is evident, <u>Wilkins</u>, 559 U.S. at 37-8

26 (citing <u>Hudson</u>, 503 U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628

27 (9th Cir. 2002).

28      Here, Plaintiff alleges excessive force due to the cell extraction, but the factual

8

1  allegations in the complaint demonstrate that the force used was a good-faith effort to maintain

2  or restore discipline and was not applied maliciously and sadistically to cause harm.

3  Specifically, prison officials attempted to have Plaintiff voluntarily cuff up and leave his cell for

4  four hours. Sergeant Hubbard spoke to Plaintiff about 6:00 a.m. and told him to submit to cuffs

5  and Plaintiff refused. (FAC at 11.) At 7:00 a.m., Lieutenant Espinoza told Plaintiff that if he

6  continued to refuse to come out of his cell force would be used to remove him. (FAC at 11.)

7  Correctional Officer Alonso told Plaintiff that he was there to observe Plaintiff until he complied

8  with being cuffed or was forcibly removed from his cell. (FAC at 12.) At 8:00 a.m.

9  Psychologist Itriago came to his cell and attempted to get Plaintiff to comply. (FAC at 12.)

10  Prior to the use of force to extract Plaintiff from his cell, at 10:00 a.m. Plaintiff was told if he

11  would submit to cuffs no force would be used. (FAC at 13.) When Plaintiff refused to comply,

12  an officer announced that they were going to use force to extract Plaintiff from his cell. (FAC at

13  14.) Plaintiff refused all attempts to get him to voluntarily comply with the order to cuff up and

14  leave his cell. Even after Plaintiff was sprayed with O.C. spray he continued to refuse to

15  comply. (FAC at 14.)

16      The allegations that officers sprayed pepper spray, rushed into his cell, and took Plaintiff

17  down to forcibly extract him from his cell due to his refusal to voluntarily comply with orders

18  fails to state a plausible claim for excessive force. The allegations in the complaint are

19  insufficient for the Court to reasonably infer that the force was used other than in a good-faith

20  effort to maintain or restore discipline due to Plaintiff's continued refusal to comply with orders.

21  Iqbal, 556 U.S. at 678-79. Other than as discussed below, Plaintiff has failed to state a

22  cognizable claim against any named defendant for excessive force due to the force used during

23  the cell extraction.

24      However, Plaintiff alleges that after he was in restraints, Correctional Officer Bautista

25  grabbed Plaintiff's testicle and penis and began to squeeze hard and punched him in the genitals

26  until Plaintiff was limp. Unlike the other allegations in the complaint, squeezing and punching

27  Plaintiff in the genitals after he is restrained could exhibit malicious intent to harm. The Court

28  finds that this is sufficient at the pleading stage to state a cognizable claim against Correctional

Officer Bautista for use of excessive force.

Plaintiff has stated an excessive force claim against Correctional Officer Bautista, but fails to state a plausible excessive force claim against any other named defendant. The Court recommends that the excessive force claim be dismissed as to all defendants except Correctional Officer Bautista.

2. Failure to Intervene

The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995); see also Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004) (neither officers who participated in the harassing search nor officers who failed to intervene and stop the harassing search were entitled to qualified immunity).

Plaintiff is alleging a failure to intervene to stop the "illegal beating" he received. However, as discussed above, Plaintiff has failed to allege sufficient facts to state a claim that the force used to extract him from his cell was excessive due to his refusals to comply with the orders to cuff up and come out of his cell. To the extent that Plaintiff has stated a claim against Officer Bautista based upon the pressure applied to Plaintiff's genitals during the struggle, the facts alleged are insufficient to state a claim for failure to intervene. Plaintiff alleges that this occurred sometime after Correctional Officer Bautista knocked him backward onto the ground. There were at least four officers in his cell attempting to control and cuff Plaintiff so that he could be removed from his cell. Plaintiff was forced onto his stomach and the officers were pressing on his back to cuff him. It is unclear that any other officer would have even been aware of the assault by Correctional Officer Bautista or would have had an opportunity to intervene given the timing and the circumstances occurring when the alleged assault occurred. The Court finds that Plaintiff has failed to state a claim based on failure to intervene and recommends that this claim be dismissed without leave to amend.

3. Deliberate Indifference to Serious Medical Needs

While the Eighth Amendment of the United States Constitution entitles Plaintiff to

10

1  medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

2  indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

3  Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

4  Cir. 2014); Wilhelm, 680 F.3d at 1122; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To

5  state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to

6  treat [his] condition could result in further significant injury or the unnecessary and wanton

7  infliction of pain," and (2) that "the defendant's response to the need was deliberately

8  indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  Deliberate indifference

9  is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical

10  need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d

11  at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than

12  ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted);

13  Wilhelm, 680 F.3d at 1122.

14       Plaintiff's claim that he was not provided medical accommodations during his transport

15  to Pelican Bay State Prison fails to give rise to a claim for deliberate indifference.  Here, Plaintiff

16  alleges that he had a medical need requiring him to be transported by special transport due to his

17  fear that he would need to use the bathroom during the transport.  However, Plaintiff was told by

18  medical that custody is responsible for providing transport for inmates with special needs.  (FAC

19  at 11.)  Although Plaintiff requested to speak with medical, he has alleged no facts that he was

20  suffering from a medical need and required medical attention.  The fact that Plaintiff himself had

21  medical concerns regarding his transfer, does not give rise to a constitutional claim for deliberate

22  indifference.

23       Plaintiff also alleges that he was not checked for injuries following the cell extraction, but

24  the complaint is devoid of any allegations that he informed anyone that he was injured or

25  requested medical treatment.  Although Plaintiff alleges that he had been subjected to pepper

26  spray and was not decontaminated, he refused the officers' attempts to decontaminate him.

27  (FAC at 15.)  The first amended complaint fails to allege any facts by which the Court could

28  reasonably infer that any named defendant was aware that Plaintiff had a serious medical need

1 and failed to adequately respond.

2 Accordingly, Plaintiff fails to state a cognizable claim for deliberate indifference to a

3 serious medical need. The Court recommends that the deliberate indifference claim be dismissed

4 for failure to state a claim.

5         4.         <u>Conditions of Confinement</u>

6 Plaintiff names S. Kernan (Secretary of CDCR) and Dave Davey (Warden at Corcoran

7 State Prison) alleging that he believes that they were the higher ups that ordered him to be

8 transferred to PBSP. Supervisory personnel may not be held liable under section 1983 for the

9 actions of subordinate employees based on *respondeat superior*, or vicarious liability. <u>Crowley</u>

10 <u>v. Bannister</u>, 734 F.3d 967, 977 (9th Cir. 2013); <u>accord</u> <u>Lemire</u>, 726 F.3d at, 1074-75; <u>Lacey v.</u>

11 <u>Maricopa County</u>, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable

12 only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a

13 sufficient causal connection between the supervisor's wrongful conduct and the constitutional

14 violation." <u>Crowley</u>, 734 F.3d at 977 (citing <u>Snow</u>, 681 F.3d at 989) (internal quotation marks

15 omitted); <u>accord</u> <u>Lemire</u>, 726 F.3d at 1074-75; <u>Lacey</u>, 693 F.3d at 915-16. "Under the latter

16 theory, supervisory liability exists even without overt personal participation in the offensive act

17 if supervisory officials implement a policy so deficient that the policy itself is a repudiation of

18 constitutional rights and is the moving force of a constitutional violation." <u>Crowley</u>, 734 F.3d at

19 977 (citing <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks

20 omitted).

21 To maintain an Eighth Amendment claim, a prisoner must show that prison officials were

22 deliberately indifferent to a substantial risk of harm to his health or safety. <u>See, e.g.</u>, <u>Farmer v.</u>

23 <u>Brennan</u>, 511 U.S. 825, 847 (1994); <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010);

24 <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>,

25 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to state a claim,

26 the plaintiff must allege facts sufficient to support a claim that prison officials knew of and

27 disregarded a substantial risk of serious harm to the plaintiff. <u>Farmer</u>, 511 U.S. at 847; <u>Frost</u>,

28 152 F.3d at 1128.

1      Plaintiff fails to allege any facts by which the Court can reasonably infer that Secretary

2   Kernan or Warden Davey violated Plaintiff's federal rights.  Iqbal, 556 U.S. at 678-79.  Even if

3   they did approve his transfer to PBSP, Plaintiff has alleged no facts to support a claim that

4   ordering the transfer was done with knowing disregard of a substantial risk of harm.  Plaintiff

5   alleges no facts that Plaintiff was at a serious risk of harm due to being transferred to PBSP nor

6   that Secretary Kernan or Warden Davey was aware of any risk to Plaintiff due to being

7   transferred.  Plaintiff has failed to state a plausible claim against Secretary Kernan or Warden

8   Davey.  The Court recommends that Secretary Kernan or Warden Davey be dismissed from this

9   action due to Plaintiff's failure to state a cognizable claim.

10      **C.    Fourteenth Amendment[2]**

11      The Fourteenth Amendment's Due Process Clause protects persons against deprivations

12   of life, liberty, or property; and those who seek to invoke its procedural protection must establish

13   that one of these interests is at stake.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (quotation

14   marks omitted).  The Due Process Clause does not confer a liberty interest in freedom from state

15   action taken within a prisoner's imposed sentence.  Sandin v. Conner, 515 U.S. 472, 480 (1995).

16   However, a state may "create liberty interests which are protected by the Due Process Clause."

17   Sandin, 515 U.S. at 483-84.  A prisoner has a liberty interest protected by the Due Process

18   Clause only where the restraint "imposes atypical and significant hardship on the inmate in

19   relation to the ordinary incidents of prison life."  Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir.

20   1996) (quoting Sandin, 515 U.S. at 484).

21      1.    Deprivation of Property

22      To the extent that Plaintiff seeks to state a due process claim based upon the alleged

23   destruction of his property, he has failed to state a claim.  The Due Process Clause is not violated

24   by the random, unauthorized deprivation of property so long as the state provides an adequate

25   post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31

26   F.3d 813, 816-17 (9th Cir. 1994).  Plaintiff has an adequate post-deprivation remedy under

27   _____
    [2] Plaintiff also alleges violation of the Fifth Amendment.  "[T]he Fifth Amendment's due process clause applies
    only to the federal government."  Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).  Since all Defendants in
28   this action are state employees the Fifth Amendment does not apply.

13

1   California law and therefore, he may not pursue a due process claim arising out of the unlawful

2   confiscation of his personal property. <u>Barnett</u>, 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-

3   895).

4          In this instance, Plaintiff alleges that Lieutenant Espinoza threatened to destroy his property

5   if he did not cuff up and get on the bus. (FAC at 11.) Plaintiff received his broken glasses and a

6   pillowcase with his legal property, but alleges that the remainder of his property was destroyed.

7   (FAC at 16.) Plaintiff's claim that his property was destroyed because he refused to comply with

8   orders to pack his property and refused to cuff up to be transferred denotes a random and

9   unauthorized deprivation of his property that is not actionable under section 1983. Accordingly,

10  Plaintiff fails to state a cognizable claim for the deprivation of his property.

11          2.      <u>Transfer to PBSP</u>

12         There is no substantive liberty interest in being housed in a particular prison. <u>Olim v.</u>

13  <u>Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>White v. Lambert</u>, 370 F.3d 1002, 1013 (9th Cir. 2004)

14  (overruled on other grounds by <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010). Neither the

15  initial decision assigning the inmate to a particular prison nor a subsequent transfer to a different

16  prison implicates the Due Process Clause. <u>Olim</u>, 461 U.S. 244-45; <u>see</u> <u>Moody v. Daggett</u>, 429

17  U.S. 78, 88 n.9 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976). Plaintiff cannot state a

18  claim based upon the decision to transfer him to PBSP.

19         To the extent that Plaintiff states that prisoners normally attend an I.C.C. hearing when

20  they are transported to another institution, a state may create a liberty interest that would be

21  protected by the Due Process Clause, but these are limited to freedom from restrain which

22  impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of

23  prison life. <u>Sandin</u>, 515 U.S. at 484.

24         While Plaintiff alleges that he was transferred, there are no allegations that the transfer

25  affected the length of his sentence, nor does he allege that his confinement at PBSP would

26  involve conditions different from those in which he was housed at CSP. Plaintiff has not alleged

27  any facts that transferring him to PBSP would impose atypical and significant hardship on him in

28  relation to the ordinary incidents of prison life. Plaintiff has failed to state a due process claim

14

1 based upon being transferred to another prison.

2      **D.    Declaratory Relief**

3      In addition to monetary damages, Plaintiff seeks declaratory relief. "'A case or

4 controversy exists justifying declaratory relief only when the challenged government activity is

5 not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence,

6 casts what may well be a substantial adverse effect on the interests of the petitioning parties.'"

7 Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of

8 Land Management, Medford Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and

9 citation omitted)). "Declaratory relief should be denied when it will neither serve a useful

10 purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

11 afford relief from the uncertainty and controversy faced by the parties." U.S. v. State of Wash.,

12 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted). The conduct at issue in this action

13 occurred in April 2016 at CSP, and Plaintiff's remedy is damages should he prevail on his claim

14 that his constitutional rights were violated. The Court recommends that Plaintiff's request for

15 declaratory relief be dismissed.

16      **E.    State Law Claims**

17      The California Tort Claims Act[1] requires that a tort claim against a public entity or its

18 employees be presented to the California Victim Compensation and Government Claims Board,

19 formerly known as the State Board of Control, no more than six months after the cause of action

20 accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2010). Presentation of a

21 written claim, and action on or rejection of the claim are conditions precedent to suit. State v.

22 Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified

23 School District, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a

24 plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6;

25 Bodde, 90 P.3d at 123. "[F]ailure to allege facts demonstrating or excusing compliance with the

26

27 [1]The Court recognizes that in City of Stockton v. Superior Court, 42 Cal.4th 730, 742 (Cal. 2007), California's Supreme Court adopted the practice of referring to California's Tort Claims Act as the Government Claims Act. However, given that the federal government has also enacted a Tort Claims Act, 28 U.S.C. § 2671, the Court here refers to the Government Claims Act as the California Tort Claims Act in an effort to avoid confusion.

28

requirement subjects a compliant to general demurrer for failure to state a cause of action." Id. at 120. Here, Plaintiff alleges that he submitted a claim form which was rejected on April 5, 2017.

"A battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988). For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Id. (citation and quotations omitted).

Plaintiff's allegations are sufficient to state a cognizable claim against Correctional Officer Bautista for battery under California law. However, Plaintiff fails to state any other cognizable battery claims.

**IV.**

**CONCLUSION AND RECOMMENDATION**

Plaintiff's first amended complaint states a claim for excessive force in violation of the Eighth Amendment and battery under California law against Correctional Officer Bautista, but fails to state any other cognizable claims or claims against any other named defendant. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff has failed to cure the deficiencies in his pleading. Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts to support his claims in this action, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that:

1.     This action proceed on the first amended complaint against Correctional Officer J. Bautista for excessive force in violation of the Eighth Amendment and battery

under state law;

2.      Kernan, Dave Davey, Chris Lesniak, J. Espinoza, D. Case, J. Hubbard, J. Ramirez, J. Cortez, J. Ledesma, G. Viduya, M. Mendoza, Michael Penn, D. Grimsley, M. Alonso, J. Clingerman, N. Balaba, F. Torres, and M. Itriago be dismissed from this action for Plaintiff's failure to state a cognizable claim against them;

3.      All other causes of action be dismissed for Plaintiff's failure to state a cognizable claim; and

4.      Plaintiff's request for declaratory relief be dismissed.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 20, 2018**

_____
UNITED STATES MAGISTRATE JUDGE

17