# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. McCURDY, | Case No.: 1:17-cv-01356-LJO-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| BAUTISTA, | [ECF No. 35] |
| Defendant. | |

Plaintiff James C. McCurdy is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment, filed February 8, 2019.

## I.

## RELEVANT BACKGROUND

This action is proceeding against Defendant Bautista for excessive force in violation of the Eighth Amendment and battery under California law.

On November 6, 2018, Defendant filed an answer to the complaint. On November 8, 2018, the Court issued the discovery and scheduling order.

///

///

1

As previously stated, on February 8, 2019, Defendant filed a motion for summary judgment, along with a motion for a protective order to stay all merit-based discovery until the final ruling on the instant motion. (ECF Nos. 34, 35.)

Plaintiff filed an opposition on May 31, 2019, and Defendant did not file a reply. Therefore, Defendant's motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.
### DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state

prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B. Summary of Allegations Underlying Plaintiff's Claims**

The incidents alleged in the complaint occurred while Plaintiff was housed at California State Prison, Corcoran ("Corcoran").

Plaintiff arrived at Corcoran on August 18, 2015, and was housed in MHCB due to his medical and mental health issues. (First Am. Compl. 8,[1] ECF No. 16.) Plaintiff had received a rule violation report for attempted murder. (FAC at 8.) Plaintiff was told that he was in a manic state and was placed on forced medication. (FAC at 8.) Plaintiff suffers from Irritable Bowel Syndrome (IBS) and has chronic pain and other symptoms which affect his everyday functions. (FAC at 8.)

In August of 2015, Plaintiff had been told that he had a projected release date of May 2017, and that he would be housed in the security housing unit at Corcoran. (FAC at 8.) While Plaintiff was housed at Corcoran he was seen by medical and mental health and provided medications to treat his chronic pain and other symptoms. (FAC at 8-9.) Plaintiff also requested other accommodations such

---
[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

4

as medical transport and lower bunk chrono. (FAC at 9.)

On April 15, 2016, Plaintiff was told by custody officials to transpack because he and a neighboring inmate were being transferred to Pelican Bay State Prison ("PBSP") because certain supervisors had implemented a policy. (FAC at 9.) Corcoran was attempting to achieve a balance of segregated inmates before it became overcrowded and there was space at PBSP and changes had been made to the mental health system there. (FAC at 9.)

Plaintiff pleaded with officials telling them that both medical and custody were aware that he had a serious medical need. (FAC at 9.) Plaintiff requested a special transport especially if he was going to be belly chained for more than 10 hours without a chance to relieve himself. (FAC at 9.) Plaintiff complained that he had not attended an I.C.C. to be put up for transfer and he had no chance to appeal the action. (FAC at 10.) The custody officer left and came back, informing his neighbor that he would not be transferred, but stating that Plaintiff would be transferred to PBSP. (FAC at 10.) Plaintiff requested to speak to a superior officer. (FAC at 10.)

Captain Lesniak came to his cell and told Plaintiff that he did not know who had ordered the transfer but it came from higher ups" which Plaintiff alleges referred to the Secretary of the CDCR Kernan and the Warden of CSP, Dave Davey. (FAC at 10.) Captain Lesniak stated that they had implemented a policy where PBSP secured housing unit had been emptying out and to create a balance between the two secured housing units, Corcoran was sending inmates to PBSP to avoid overcrowding. (FAC at 10.) When Plaintiff asked who determined what inmates were chosen to move, Captain Lesniak did not answer. (FAC at 10.) Plaintiff stated that he was going to file an inmate appeal of the transfer and that he had serious medical issue and needed medical attention to prevent his transfer without a special transport. (FAC at 10.)

Plaintiff contends that normally inmates attend an I.C.C. hearing when they are considered for transport to another institution. (FAC at 10.) At this hearing, any medical issues are discussed. (FAC at 10.) The inmate would then have 30 days to appeal the transfer decision. (FAC at 10.) Plaintiff contends that he was denied a right to a hearing on the transfer and to see medical to get a special transport because this happened on the weekend. (FAC at 10.) Plaintiff alleges that on a regular transport bus he is not allowed to use the toilet on the bus and it is very difficult to urinate because

5

your hands are placed together in front. (FAC at 11.) Plaintiff has at least 8 to 10 bowel movements a day and has humiliated himself on prior transports because he could not properly relieve himself. (FAC at 11.) Plaintiff suffers from chronic pain, vomiting, nausea, and diarrhea. (FAC at 11.) Plaintiff was told by medical that custody is responsible for providing transport for inmates with special needs. (FAC at 11.) Custody told Plaintiff that he needed to speak to transport and that if he did not cooperate he would be physically removed from his cell on April 18, 2016, and his property would be destroyed. (FAC at 11.) Plaintiff refused and requested several times for custody to alert medical and their superior officers to discuss his transfer and his conditions, but no one responded. (FAC at 11.)

On Monday, April 18, 2016, custody officers came to Plaintiff's cell and told him to get on the bus. (FAC at 11.) Plaintiff again asked to speak to medical and commanding officials about his serious medical needs but no one responded. (FAC at 11.) About 6:00 a.m., Sergeant Hubbard came to the cell door and told Plaintiff to submit to cuffs and that he was holding everyone up. (FAC at 11.) Plaintiff asked him to alert medical officers because of his needs but the request was ignored. (FAC at 11.)

About 7:00 a.m., Lieutenant Espinoza approached Plaintiff's cell and told him that if he refused to cuff up they would use force to remove Plaintiff from his cell, put him on the bus, and destroy his property. (FAC at 11.) Plaintiff told him to alert medical staff to his serious medical need but no one responded. (FAC at 11-12.) Correctional Officer Alonso was at Plaintiff's door and told Plaintiff that he needed to see him at all time and was concerned for his safety. (FAC at 12.) Plaintiff asked him why he had not been able to speak to medical staff or a commanding officer about the possibility of getting a medical transport and to guarantee that his property would be properly packed and sent to PBSP. (FAC at 12.) Correctional Officer Alonso stated that he did not have anything to do with medical and he was there to keep an eye on Plaintiff until he submitted to being cuffed or was forcibly removed from his cell. (FAC at 12.)

After Plaintiff refused to leave his cell, Registered Nurse N. Balaba gave officials clearance to use O.C. spray. (FAC at 12.) Plaintiff did not get a chance to speak with medical officials and was physically, mentally, and emotionally injured. (FAC at 12.)

6

At 8:00 a.m., Psychologist M. Itriago responded to Plaintiff's cell to address his issues. (FAC at 12.) She told Plaintiff that everything would be resolved when he submitted to cuffs, but Plaintiff still refused until he spoke with medical officials. (FAC at 12.) Captain Lesniak, Lieutenant Espinoza, and Sergeant Hubbard evaluated the totality of the circumstances and determined that the use of force was an appropriate option. (FAC at 12.) They would use O.C. spray and assess his behavior to determine the effectiveness and if ineffective the extraction team would enter the cell. (FAC at 12.)

At 10:00 a.m., Lieutenant Espinoza explained on video the force options that were to be used and Captain Lesniak and Lieutenant Espinoza authorized an additional application of O.C. spray. (FAC at 13.) They then determined that cell extraction was necessary. (FAC at 13.) An extraction team was assembled. Sergeant Case was the camera man; Sergeant Hubbard was less lethal force; Correctional Officer Ramirez was less lethal force/baton; Correctional Officers Cortez and Mendoza were escort; Correctional Officer J. Ledesma was handcuffs; Correctional Officer G. Viduya was leg irons; Correctional Officer J. Bautista was shield man; Correctional Officer Alonso was scribe; Correctional Officer Pena was a bystander; J. Clingerman was doorman; and Registered Nurse Balaba and Physical Therapist Torres were there for medical support. (FAC at 13.)

At 10:00 a.m. the extraction team entered 41A-R with a battering ram and other equipment. (FAC at 13.) The officers gather in front of Plaintiff's cell in gear and masks. (FAC at 13.) An officer told Plaintiff to submit to cuffs and no force would be used. (FAC at 13.) Plaintiff asked if they would put him on a special transport and guarantee that his property would be properly packed. (FAC at 13.) There was no special transport there. (FAC at 14.) Plaintiff was told that he was holding up the bus at R&R. (FAC at 14.) Plaintiff was under the impression that he would be placed on the same bus and his property would be destroyed so he refused. (FAC at 14.) An officer announced that force would be used to extract Plaintiff form his cell. (FAC at 14.)

Two officers used the battering ram to clear the doorway of the cell. (FAC at 14.) As Plaintiff stood on the bunk in his cell, Sergeant Hubbard sprayed O.C. into the cell and Plaintiff was disoriented. (FAC at 14.) Plaintiff began coughing and gagging and the sergeant gave orders for him to cuff up. (FAC at 14.) Plaintiff still refused. (FAC at 14.) The sergeant administered three bursts

of O.C. spray. (FAC at 14.) Before Correctional Officer Clingerman manually opened the door, the officers charged into the cell. (FAC at 14.) Defendant Correctional Officer Bautista came in with the shield and charged at Plaintiff who was on his bunk. (FAC at 14.) Plaintiff put his hands forward and Defendant Bautista crashed into Plaintiff at the same time that Correctional Officer Ramirez began hitting Plaintiff with the baton on his head and shoulders. (FAC at 14.) Plaintiff was forced to the back of the cell onto his back. (FAC at 14.) Defendant Bautista fell on Plaintiff trapping him under the shield. (FAC at 14.) The correctional officers began pulling Plaintiff out from under the shield. (FAC at 14.)

Defendant Bautista handed the shield to another officer and one officer grabbed Plaintiff's arm. (FAC at 14.) Bautista, Viduya, Ledesma, and Ramirez forced Plaintiff onto his stomach as they placed leg irons around his ankles and his hands into cuffs. (FAC at 14.) Plaintiff's right hand was trapped under one of the officer's boots and was mashed into the concrete. (FAC at 14.) Plaintiff was placed into cuffs while the officers placed their weight on him and mashed his head into the concrete. (FAC at 14.) Defendant Bautista ran his hand up into Plaintiff's shorts and grabbed Plaintiff's testicle and penis and began to squeeze hard. (FAC at 14.) Defendant Bautista began throwing punches into Plaintiff's genitals until Plaintiff screamed and went completely limp. (FAC at 15.) Four officers carried Plaintiff out of the cell and placed him face down on the concrete. (FAC at 15.)

Plaintiff was escorted to the rotunda by Cortez and Medina who asked him if he wanted to decontaminate. (FAC at 15.) The shower was running and they were about to place Plaintiff under the running water, but he refused because he did not want to be wet during the transport. (FAC at 15.) Plaintiff was not checked for injuries. (FAC at 15.) Cortez and Medina placed Plaintiff into a car and Plaintiff asked for his glasses and his legal paperwork. (FAC at 15.) Plaintiff was given his broken glasses and a pillowcase which was placed in a box. (FAC at 15.) The rest of Plaintiff's property was destroyed. (FAC at 15.)

Plaintiff states that he still has difficulty holding things in his hand and his jaw was injured and comes unhinged and randomly pops when he is eating. (FAC at 16.) Plaintiff is seeking monetary damages. (FAC at 20, 22.)

///

**C. Statement of Undisputed Facts**

1. Non-healthcare inmate appeals are appropriate for allegations of excessive force, failure-to-protect, retaliation, or any other alleged misconduct by correctional officers or their superiors. (Attachment 1, Declaration of M. Voong (Voong Decl.), ¶ 2; Attachment 2, Declaration of C. Burnett (Burnett Decl.), ¶ 2; Attachment 3, Declaration of W. Coleman (Coleman Decl.), ¶ 2.)

2. Non-healthcare inmate appeals are reviewed by the institution Appeals Office and the Office of Appeals. (Voong Decl. ¶ 2.)

3. When an inmate submits an appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator will reject (or "screen out") and return the appeal with the reason for the screening, and instructions on how to correct the defect, if correction is possible. (Voong Decl. ¶ 4; Coleman Decl. ¶ 6; Burnett Decl. ¶ 6; Attachment 4, Declaration of S. DeJesus (DeJesus Decl.), ¶ 6, Attachment 5, Declaration of M. Oliveira (Oliveira Decl.), ¶ 6.)

4. When the Appeals Office receives an inmate appeal, the policy and practice is for an Appeals Coordinator to assign a log number and make an initial provisional determination of the issue raised by the appeal. (Coleman Decl. ¶ 6; Oliveira Decl. ¶ 6; Burnett Decl. ¶ 6; DeJesus Decl. ¶ 6.)

5. Between April 18, 2016 and October 10, 2017, Plaintiff, submitted seven inmate appeals that were accepted and decided at the third and final level of review. (Voong Decl. ¶ 8(a)(o).) None of these inmate appeals exhausted allegations concerning Plaintiff's claims that on April 18, 2016, Defendant Bautista grabbed and squeezed Plaintiff's penis and testicles, and punched Plaintiff in the testicles after restraints were applied to him. (Id. at ¶ 8(a).)

6. Between April 18, 2016 and October 10, 2017, Plaintiff submitted inmate appeal log no. CSPC-7-17-00350, which grieved that Defendant Bautista used excessive force against Plaintiff on April 18, 2016. (Oliveira Decl. ¶ 10(d).) This appeal was partially granted at the second level of review, it was pending review by the Institution Executive Review Committee (Use of Force Committee). (Id.)

7. Between April 18, 2016 and October 10, 2017, Plaintiff did not submit an inmate appeal that received a third-level decision related to any of the allegations at issue here or related to Defendant Bautista. (Voong Decl. ¶ 8(a); Attachment 6; Declaration of S. Gates (Gates Decl.).)

9

8.      Plaintiff filed a Government Claim concerning the battery allegation at issue here, but it was rejected by the Government Claims Program on April 5, 2017. (Attachment 7, Government Claim Form No. 16006066.)

**D.      Analysis of Defendant's Motion**

Defendant argues that Plaintiff did not complete the administrative process for his claims against him. In addition, Plaintiff did not timely file his state law battery claim within the timeline set by the Government Claims Act.

1.      <u>Exhaustion of Administrative Remedies</u>

Between April 18, 2016 and October 10, 2017, Plaintiff, submitted seven inmate appeals that were accepted and decided at the third and final level of review. (Voong Decl. ¶ 8(a)(o).) None of these inmate appeals exhausted allegations concerning Plaintiff's claims that on April 18, 2016, Defendant Bautista grabbed and squeezed Plaintiff's penis and testicles, and punched Plaintiff in the testicles after restraints were applied to him. (<u>Id.</u> at ¶ 8(a).)

Between April 18, 2016 and October 10, 2017, Plaintiff submitted inmate Appeal Log No. CSPC-7-17-00350, which grieved that Defendant Bautista used excessive force against Plaintiff on April 18, 2016. (Oliveira Decl. ¶ 10(d).) Defendant submits that this appeal was granted at the second level of review, but it is pending review by the Institution Executive Review Committee (Use of Force Committee). (Oliveira Decl. ¶ 10(d).) Defendant argues that "Plaintiff filed suit before a final decision has been issued on this appeal (which will occur after the Use of Force Committee issues its findings), and he therefore failed to exhaust the administrative remedies prior to filing suit.

The Court finds that Defendant has not met his initial burden of review in demonstrating that Plaintiff failed to exhaust the administrative remedies with respect to Appeal Log No. CSPC-7-17-00350. Based on the evidence submitted, the Court cannot determine whether Plaintiff has or has not exhausted the administrative remedies. Defendants argue only that Plaintiff filed this action before a final decision was rendered on his appeal which will occur after the Use of Force Committee issues it findings. However, the Use of Force Committee findings is not relevant to whether Plaintiff has exhausted the administrative remedies, and therefore Defendant has not met his initial burden in demonstrating that Plaintiff failed to exhaust the administrative remedies prior to filing suit. <u>See, e.g.</u>,

10

Adams v. Garcia, No. CV 16-6510 VBF (FFM), 2019 WL 1441679, at *4 (E.D. Cal. Mar. 26, 2019) (citing Cal. Code Regs. tit. 15, §§ 3084,7(d)(3), 3084.1(b) compare to § 3268.1(e)).[2]

    2.    Compliance with Government Claims Act

As previously stated, Defendants argue that Plaintiff failed to timely file this action under California law. Defendants' argument is without merit.

The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.[3] Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2 (West 2011). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Government Claims Act. Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

A cause of action against a public employee for injury resulting from an act or omission in the scope of employment is barred if an action against the employing public entity would have been barred because of the plaintiff's failure to present a written claim or failure to commence the action within the time specified in Government Code section 945.6. Cal. Gov. Code § 950.2.

Once rejected, the suit must be commenced within six months "after the date such notice is personally delivered or deposited in the mail." Cal. Gov. Code § 945.6, subd. (a)(1). "The plain meaning of section 945.6, subdivision (a)(1), is that the statute of limitations therein begins to run

---

[2] Because the Court finds that Defendant has not met his initial summary judgment burden, the Court need not and will not address the allegations raised in Plaintiff's opposition.

[3] Formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

11

when the written rejection notice is deposited in the mail to the claimant, or is personally delivered, but not when it is delivered by the postal employee after having been deposited in the mail pursuant to section 913." Edington v. County of San Diego, 118 Cal.App.3d 39, 46 (1981). Even substantial compliance with this requirement does not excuse the late filing of the government claim. Hunter v. Los Angeles County, 262 Cal.App.2d 820, 822 (1968). The six-month statute of limitations cannot be extended by any provision outside of the Act. Martell v. Antelope Valley Hosp. Medical Center, 67 Cal.App.4th 978, 982 (1998) (emphasis added). Compliance with the claims statutes is mandatory. Farrell v. County of Placer, 23 Cal.2d 624, 630 (1944).

Plaintiff filed a Government Claim concerning the battery allegation at issue here, but it was rejected by the Government Claims Program on April 5, 2017. (Attachment 7, Government Claim Form No. 16006066.) Plaintiff was, therefore, required to file his action within six months after notice of his Government Claim rejection was mailed. In this instance, with application of the mailbox rule, Plaintiff filed the original complaint in this action on October 5, 2017, which is timely.

Plaintiff's proof of service indicates that the complaint was mailed on October 5, 2017. (ECF No. 1.) The prison mailbox rule applies to the filing of inmates in § 1983 actions. Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). Since the prison mailbox rule applies to Plaintiff's complaint, it is considered filed at the time that he delivered the document to prison authorities to be forwarded to the clerk of the court. Id. at 1106. Accordingly, applying the mailbox rule, Plaintiff's complaint was timely filed, and Defendants' motion to dismiss the state law battery claim should be denied.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment for failure to exhaust the administrative remedies be denied; and
2. Defendant's motion for summary judgment to dismiss Plaintiff's state law battery claim as untimely be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after

being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 18, 2019**

UNITED STATES MAGISTRATE JUDGE